Thank you, Your Honors. Good morning. May it please the Court, my name is William Hooks. I am here representing the Juvenile TM. The issue in this case is a relatively straightforward one, the issue of whether the district court's restitution award was authorized by the restitution statute. It's important to note initially that Ms. Starr, the victim's mother, did not get a restitution award based on any injury or compensable damage to her son, Mr. Reddog. She was asserting restitution for her own lost income. The relevant and applicable statute speaks to restitution awards for a loss of income or other expenses in two subparts. Subsection B2 talks of bodily injury to a victim and authorizes an award of restitution to the victim. In the Wilcox case, which the government referred the courts to recently, the court made clear that the language of the statute with reference to the victim means just what it says, that the person to whom restitution may be made is the victim who suffers bodily injury. Kagan. So that's off the table on this thesis? So we're not talking about subsection 2 anymore? Hooks. Turning to subsection B4, which is the other remaining subsection of the statute, it provides that in any case the court may order restitution to reimburse the victim for lost income or other expenses incurred during participation in the investigation of the offense. In this case, again, the statute by its plain meaning refers to the victim, not a victim or any person. It refers to the victim. And under the same theory, the victim would be the decedent, in this case Mr. Reddog. Ms. Starr did not participate in the investigation. The damages, the injury or award that she claimed was damage for her own lost income for either losing her job or quitting her job. Well, that's sort of the term victim is a person directly and proximately harmed, right? Yes. And while with regard to the physical injury section, it seems to be specifically talking about the person who was physically injured. Couldn't somebody other than the person physically injured come within the definition of a person directly and proximately harmed? That's correct, Your Honor. The statute does not say that there can only be one victim of any particular crime. Right. So why is this victim the same victim as the victim in the other section that's talking about the physical injury? The district courts didn't distinguish the grounds upon which it determined that Ms. Starr was a victim. And we've kind of raised two different approaches to this argument. On the one hand, is she a victim, was she directly and proximately caused or harmed by the conduct? Assuming arguendo that the Court determines that she was, we still get to what can she be compensated for. As a victim, can she get her own lost income conducting a parallel, completely independent investigation? Why is the better argument that it's the investigation and that she did her own investigation, she wasn't participating in the investigation, i.e., the government's investigation? That's correct. We believe that the statute authorizes investigative costs, as in the Gordon case, cited in our brief, for participation in the investigation conducted by the government. Typically, when a crime is committed, the government investigates. The statute does not permit any person related to the victim to conduct his or her own investigation. The result would be an open-ended and limitless search defied only by the motivation or the whims of the individual or persons involved without any real structure or connection to the underlying criminal investigation conducted by law enforcement. We think that the statute is read broadly to permit restitution but not so broadly as to permit a family member, as in this case, to conduct her own investigation and quit her job. So if the mother says or the government says, gee, you know, will you help us go out and look in the places he's likely to be or search along the river, those sorts of things, then, okay, she may be able to recover. But if, in addition to the government wandering around looking up and down the river, she makes her own contacts and is wandering around looking up and down the river,  That is our provision, Your Honor. The FBI search, they brought in scuba teams to search the river. They conducted extensive investigations over, I think, an 11-month period. And which part of the statute allows the first and not the second? Well, I think that B-4 would, Subsection B-4 would be relevant for both of those scenarios. Subsection A-2, which defines victim, and then Subsection B-4, which talks about in any case the victim can recover certain investigative costs. And so with those two statutes in play, if the government has asked the victim, for example, to go to the places where her son used to hang out or to contact his There are a number of scenarios in which the government requests the victim's family to participate in the government's investigation. Do you have any cases that serve out the statute that say it's only when the government asks the victim to go out and do some investigation, help investigation, that she gets wage loss? I do not have any case to refer, Your Honor, to specifically. But there are no cases otherwise either. There's no case where anybody's ever gotten restitution under these circumstances. I have not found any case in which anybody got restitution under these circumstances. There are tangentially related cases, as in the Wilcox case, where the court on appeal disallowed the restitution award for a scenario or a rationale similar to that which I am talking about today. Also, the other thing that's troublesome to me is this notion of getting restitution for losing her job because she looked for seven months. I mean, I gather that I would assume that the assumption in this provision is that if you take some time off from work, you get paid for it, but not that you can just leave your job. I agree, Your Honor, and that accurately identifies the problem with the theory of restitution which the court permitted in this case, which is totally open-ended, driven by the person who's quitting her job or losing her job. Is it one week, one month? Well, here it was significantly more than that, 1,000 hours of work that she claimed she had lost income for while she was conducting her own investigation. If you want to reserve some time, you have about two minutes. Very briefly, Your Honor, and I would like to reserve just a moment, but I want to talk also on a related matter we argued before the Court that restitution in this matter, because it did involve a juvenile, was discretionary. Well, didn't he say, but even if it's discretionary, I'm exercising my discretion, so what doesn't matter? That is correct, Your Honor, and that leads me to my final point. We believe that the Court on these facts abused its discretion in deciding to award restitution to begin with. Thank you. Thank you. Good morning. Again, I'm Joe Thagard with the United States Attorney's Office. I also prosecuted this matter. And I will confess at the outset that the statute is somewhat difficult to deal with, and this is a difficult area. Is it also true that there's no case in which anybody has ever gotten restitution under these circumstances? Yes. You know, I agree with that, Your Honor. I think about the closest case out there is the Pizzacello case, but frankly I was familiar with that. I helped try that in the lower court, and I don't know that that's quite on point. So I think I would have to acknowledge that there is not a case on point that addresses this issue. My sort of visceral reaction when I dealt with this issue was simply turning to and 364A, sub A2. And, again, it simply refers to somebody who is directly and proximately harmed by the person's crime. So you take the position that the mother was a foreseeable victim? I do, Your Honor. I simply think that when you participate in a crime of this nature where you hit somebody with a baseball bat, that it's reasonable to expect that there are going to be consequences, not only to Yes, but this strikes me as almost like a Paul's graph problem, because she struck her with a baseball bat. She was only convicted of that. A, she wasn't convicted of the murder. So the disappearance is only indirectly connected to that. Then you have the mother's involvement in leaving aside the question of whether the investigation in the statute would even cover this. And assuming for the moment that it would, still this is not the official investigation. It's the mother's own homegrown investigation. And then we have the fact that the mother decides to conduct this investigation by missing enough work to lose her job rather than conducting the investigation at points when she isn't working and wouldn't have to lose her job, which is not particularly foreseeable either. And so it just seems to me to be so far removed from what this woman was convicted of, which was hitting somebody with a baseball bat. Well, and I think that's the issue that the court's got to direct its attention to. And I would note that I think it's the Gamatek case sort of talks about how far we can go, how far we can go away from the offense of conviction in determining damages. And what I would note in this instance is I think we've got to look at the whole context of this because it is true that she pled and pled at the United States' discretion to a lesser offense here other than the murder. But by the same token, I don't think that we can entirely divorce this from the murder. But there's a Supreme Court case that says you can only get restitution for the actual offense, right? Right, right. And the conduct. And that's the interesting thing. The Supreme Court does talk about conduct. And so I don't know that that is necessarily strictly limited to the element, Your Honor. The element of crime doesn't involve the guy dying. It doesn't. It doesn't. But, you know, even if he hadn't died, I mean, if she'd beaten him and they'd taken him out and tossed him over the bridge and somehow he miraculously survived and was lying there along the riverbank and the victim's mother goes out looking for him and incurs investigative costs, then I think that they're certainly entitled to do that. So I don't know that this intervening cause necessarily entirely prohibits her from recovering those damages. What about the fact that the statute – do you agree that we're talking about subsection 4 and not subsection 2? I do, Your Honor. I don't want to concede entirely that Wilcox is right, but it's a pretty significant authority. So I agree that that's what we're looking at. All right. So then if we're talking about subsection 4, why doesn't the same logic lead to the fact that the investigation is the investigation, i.e., the official investigation and not somebody's own made-up investigation? Well, you know, I don't know that necessarily every investigation begins with the police involvement in it. And it's certainly not uncommon. In Montana, on some of these Native American reservations, that there are criticisms, you know, sort of aimed at the authorities that they don't investigate crimes zealously enough. But what this case illustrates is if you kept it to the official investigation, there would be some limits on it because the official investigators would ask for whatever help they needed and that would limit what the money is for. But here, and presumably they wouldn't ask somebody to do so much work that they might lose their job. But here, the woman just decided apparently to just, you know, stop working. And instead of looking, as I say, when she wasn't working, to look when she was working, would or should have been working, and give up her job. That presumably wouldn't happen if you had it limited to the investigation. Well, I think that that would be a bright line, certainly, Your Honor. I guess that's what I'm saying. It's a limiting, sensible limitation. Otherwise, you're sort of in Never Never Land in terms of what somebody decides to do. Well, I agree that would be a bright line. But I think that the other way to address this issue is simply look at it from whether there's an abuse of discretion in terms of how the trial courts deal with it. No, no, no. This is a statutory interpretation question. I don't see how this problem is an abuse of discretion problem. The investigation is either a specific investigation or any investigation. And so I see what you're saying. I think from a bright line perspective that, you know, that might be useful. However, you know, I sit here, I've dealt with this woman, and I know this isn't an issue of statutory interpretation, but, you know, her son was missing. And she went out looking for him, and ultimately I think what happened was she lost her job. I don't think it's just that she randomly quit, but she was looking for this man. She first didn't even know if he was dead and was looking for him. And then after it became, I think, reasonably apparent that, in fact, he was dead, she went looking for the body. And I think that both those are sort of reasonable. I mean, also, strictly speaking, I mean, was she investigating the offense? Not really. She was looking for her son. I mean, she wasn't investigating an offense in the criminal sense. Well, that's true. But, you know, certainly the recovery of a body in a homicide case is always significant. There are forensic issues that attach to that. And I think that if she had found the body, I mean, we just sat through an argument in the previous case where there was some discussion about what it was that actually killed this fellow. And so I think that there are some legitimate investigative uses to that. And on one level, this all seems trivial because it's $7,000. But to this woman, this young woman who's going to come out of juvenile detention, and oh, $7,000 or $8,000, it's going to be a huge pile of money. And the question is, should she be responsible for it? You know, it is. And the fact of the matter is she's sort of got the luck of the draw here in the sense that she wasn't prosecuted as an adult. And I think it was appropriate that the police – Well, it was the luck of the draw. Presumably there was a deal, and she did testify against her brother. Yeah. But we didn't call her, actually. Sure. You know, she was called in her brother's case by the defense. But the bottom line is she's getting out of prison. Depending on what happens with her brother, he will not be paying any money. Mr. Bearcub has pled guilty to second-degree murder and will eventually be out of prison. Did the brother also have this restitution? Pardon? Did the brother also? Yes, he did, Your Honor. But he's never going to pay because he's never coming out of prison. Right, right. So that leaves Bearcub. Bearcub's going to be out, I think, in about 180 months. And restitution was ordered in his case. He has not appealed. But I think that, you know, relevant to rehabilitation, and I recognize that's the primary objective of the Juvenile Delinquency Act, I think that there's still something to be said for making some sort of restoration to the victims. If she doesn't pay the restitution, does she go back to jail? You know, conceivably there could be a violation of the supervised release, as I recall, Your Honor. Does she have to willfully not pay, in other words, secrete funds away that could otherwise be delivered? Well, I don't know that it goes quite that far, Your Honor. I think that it would be addressed more informally in terms of whether a petition was filed to revoke. On the grounds that she's not paying restitution? Yes, Your Honor. But, you know, I certainly don't want to exclude that as a possibility. And I recognize that, you know, this is a burden to her, but the fact of the matter is she committed a fairly serious juvenile act here, and I think that there's something that may help her rehabilitation by recognizing when she gets out of juvenile detention that she's still on the hook for this. If the panel doesn't have any other questions, I'll go ahead and sit down. Thank you very much, counsel. You have almost two minutes left. Thank you, Your Honors. With regard to the Pizzacello case, which Mr. Thagert alluded to as being somewhat on point perhaps, in Pizzacello the family members asserted the rights of the victim in that case, contrary to this situation in which Ms. Starr asserted her own injury, not those of her son. There was a reference to her being dissatisfied with the investigation, and that prompted her to go out and look for her son's body. The pre-sentence report refers to search parties scanning the rivers with boats, snowmobiles, and a helicopter, and the FBI brought in a scuba team to search the rivers. She may have been dissatisfied, but it's not as if the government was sitting on its hands doing nothing. And that also identifies the problem in this case where the subjective whims or motivations of a family member drive the whole show when it comes to a restitution award. Is there any explanation of why she lost her job in order to do this? That did not come out, Your Honor. That was not developed in the record. Apart from what is referred to in the pre-sentence report, she made a victim impact reference as well to losing her job with, I believe, a rest home or a nursing home. With regards to the rehabilitative concept, Ms. Martel, when she gets out, as the Court has identified, will be the only one of the three people responsible for paying this restitution award if it stands. I think, inarguably, she was the least culpable of the three. That is my understanding. Apparently, Bearcup will be, too. Pardon me? Apparently, Bearcup will also be. That is my understanding as well. Well, Bearcup, if he's got 180 month sentence, I think it is unlikely that he will be able to pay much restitution in the period between now and the time he gets out. Ms. Martel will be out long before then. Finally, Your Honors, we agree this is not a discretionary matter. It's a matter of statutory interpretation. Does 3663A permit and authorize the district court in this situation to award restitution for a mother's lost income? We submit the answer is no. Well, your position is that the determination by the trial judge that this was a proximate victim is a legal question only and not a mixed question of fact and law. Yes, Your Honor. We believe both her status as a victim under A2 directly and proximately harmed, but also even if she is a victim, can a victim, as that term is defined, be awarded lost income under these circumstances for conducting an investigation apart from the government's investigation? Thank you very much, counsel. Thank you. Thank you, counsel, for a useful argument. The case of United States v. Juvenile Female is submitted and will come on to United States v. Allen.
judges: Fernandez, Berzon, Bea